UNITED STATES COLUMN CO. v. BENHAM COLUMN CO.

(District Court, E. D. New York.    June 19, 1915.)

PATENTS ⬥328—VALIDITY AND INFRINGEMENT—CONCRETE FILLED COLUMNS.
    The Thorn patents, No. 835,717, No. 844,973, and No. 844,974, for concrete filled iron columns for buildings, and especially relating to the caps for supporting lateral beams, and means for joining the columns where one is set above another, *held* valid and infringed except claim 1 of patent No. 835,717, which is void for indefiniteness of statement.

In Equity.    Suit by the United States Column Company against the Benham Column Company.    On final hearing.    Decree for complainant.

Robert B. Killgore, of New York City, for plaintiff.
Goepel & Goepel, of New York City, for defendant.

CHATFIELD, District Judge.    This action charges infringement of three patents issued to George F. Thorn, as follows: 844,973, February 17, 1907, upon an application filed September 6, 1905; 844,974, February 19, 1907, upon an application filed October 17, 1905; and 835,717, November 13, 1906, upon an application filed December 5, 1905.

It appears that the use of fireproof construction in buildings and of reinforced concrete as a material for fireproof arches and walls was, at the time of the applications for these patents, undergoing great development.    The prior art shows concrete in many forms of use, and its fireproof qualities were well known.    But in the prior art shown by this record, we have very few instances of the application of concrete in the place of other materials, for accomplishing results which are now well recognized.    A great reduction in the price of cement has been one of the elements in increasing the use of concrete, and the great growth of fireproof construction, by increasing the demand, has turned the attention of inventors and builders to what before that time had been matter of accidental or casual interest.

At the time when this subject first underwent practical development, the old idea of filling a hollow receptacle or column with concrete and letting it harden had been used, both in reinforcing such structures as pillars in a cellar (under one of the government buildings in Washington) and also in New York City by several concerns who were offering for sale upon the market hollow cast iron columns in which soft concrete had been poured and allowed to harden.    A cast iron cap or plate with a flange-like head fitting over the top of these columns, and offering a supporting surface for the tier of beams to be laid thereon was used with columns which were intended to serve more than the

purpose of a post. The endeavor to bolt together the parts of the structure and to erect more than one story by means of these cast iron columns filled with concrete led to the discovery of certain defects which interfered with the sale of the columns and the recommendation of their use by architects. The extra diameter of the cast iron cap, fitting down over the column, prevented its satisfactory use where the architect wished to inclose the column in a thin partition or floor, and the lack of strength and stability in the cast iron caps, even though the floor beams were bolted together or bolted to the caps, proved a severe handicap to the Thorn Column Company, of which the applicant for the above patents was president.

This company had in its employ one John J. Tresidder, who, according to the testimony, as early as the month of May, 1905, had learned, through his work as draftsman, the difficulties attending the use of the Thorn concrete columns.

It appears from the testimony of one Trillion, an architect, that in the month of July, 1905, he had some conversation with Mr. Tresidder as to the disadvantages caused by the extra diameter of the cast iron cap, above the place where it fitted upon the column. His testimony is to the effect that Tresidder stated to him that he had some ideas about making the size of the cap no greater than that of the column by inserting the cap in the column. But this testimony is not definite, and is not sufficient upon which to base invention, in view of the prior art and matters which will be discussed presently as to the relations between Thorn and Tresidder.

In the month of August of this year, Mr. Thorn, who evidently had in mind the same difficulties which Tresidder had become aware of, and who necessarily, as the president of the company, was seeking some solution, noticed on Broadway, New York, a building in which concrete columns were being used, and conceived the idea of adopting the well-known principles of making the cap equal in diameter with the column, but to telescope it within the column, and also by leaving both hollow, of carrying the concrete in a homogeneous mass up into the space within the cap, while providing brackets or shoulders, as a part of the cap, to which the tier of the floor beams could be fastened. He also thought of providing a recess in the cap or top of the column, by means of which the column of the next tier could be firmly set in the cap of the tier below. He returned to his office and had Mr. Tresidder prepare drawings embodying these ideas. This testimony is not disputed by Tresidder, and it is not disputed that Mr. Thorn took these drawings to his patent attorney, who prepared the necessary specifications and drawings with such promptitude that upon the 6th of September, 1905, Thorn filed his first application in Washington. In the meantime Tresidder had planned to leave the employment of the Thorn Company and to form a column company of his own; as he was familiar with the trade, and apparently felt that Thorn's applications for patents would not prevent his using ideas which he recognized were valuable, and which apparently were following along the lines of the conversations which he had had with Mr. Trillion.

On September 5, 1905, Tresidder showed to a witness by the name of James R. Gray a drawing which the witness signed that day, which

disclosed a column and cap of uniform diameter with the concrete from the column extending up within the recess of the cap. This witness testifies that Tresidder had talked with him at various times at his home prior to the date upon which this drawing was initialed, in order to secure the witness' advice about methods of constructing the iron parts of the column. This witness was a stationary engineer, and subsequently filed an application, on his own part, for a form of column like that of the sketch which he initialed for Tresidder upon the 5th of September, 1905.

It is thus evident that Tresidder did not use Gray's suggestion as to the metal construction, nor did he apply for any patent on his own part until the 23d of October, 1905, when he filed a specification, describing a fireproof column and cap with a solid core or pillar with a flattened upper end and cap, with an interior recess for interlocking with the flattened end of the core or pillar by rotation through 90 degrees, and for concrete filling of this socket and of the interior core of the column after locking them in place.

It is evident that Tresidder knew at this time that Thorn had filed applications in the Patent Office for the columns and caps of which the exterior diameters were the same and in which the concrete extended above the upper end of the column into the hollow of the cap.

Tresidder is shown to have applied to patent attorneys upon the 2d of October, 1905, for the filing of the specifications, which were presented in Washington upon the 23d of that month, but there is no evidence that Tresidder disclosed to his attorneys, or claimed in any way, that he was the inventor of any of the features of the applications then pending before the Patent Office or in the hands of Thorn's patent attorneys.

Subsequently litigation was had between the Thorn Company or Thorn's assigns and the various companies manufacturing columns under Tresidder's guidance. Injunctions were issued upon Tresidder's default, forbidding his infringement of the Thorn patents. The present defendant seems to have acquired by purchase the rights of one of these companies after such injunction. This case is presented, not upon the doctrine of contempt, but on the alleged independent infringement of the patent by the present defendant. Tresidder has been called as a witness in the present action, as well as in some of the proceedings based upon his default in contesting the previous suits, and has claimed to be the inventor of the features shown by telescoping and extending the concrete of the column up into the hollow of the cap.

The issuance of the patents to Thorn at a time when Tresidder was making his own application in the Patent Office for a modification or improvement of the idea and the prosecution of Thorn's applications after Tresidder had prepared drawings for Thorn for that purpose, and after Tresidder had left the Thorn Company to go into competition, makes it impossible to find that Tresidder considered himself to be the real inventor of the improvements claimed by Thorn, or that the Thorn patents should be held invalid on Tresidder's present testimony.

The issuance of patents presumptively gives Thorn the right to be considered the inventor, in the absence of conclusive testimony that

his claims were incorrect, and the present record certainly shows no more than that Tresidder may have recognized some of the difficulties which Thorn solved, and may have reached a partial understanding of such solution, while still in Thorn's employ, but do not go so far as to establish his right to claim the complete invention, which evidently was worked out by Thorn in August of 1905, and immediately communicated to Tresidder for the preparation of his drawings.

Assuming that Tresidder is honest in his belief that these ideas are his own, it is evident that an incomplete or fragmentary mental concept, which is suddenly made practical and workable by full explanation from an outside source, presents a most difficult problem if the person having that concept thereafter attempts to go back and determine just what had been in his own mind and how fully he had appreciated the ideas concerned.

Under the circumstances it must be held that the proof on the part of Tresidder has not shown so clearly and fully that he had done more than work upon the same problems as those which were occupying Thorn's mind before Thorn reached a complete practical solution, and Tresidder's conduct immediately thereafter makes it impossible to upset the Thorn patents and to give priority of invention to Tresidder, even if the date of some of Tresidder's cogitations and partial solutions was shortly before the date upon which Thorn solved the entire problem.

The defendant's structure is exactly like the combined structure of the Thorn patents, and the use of an apertured plate at the top of the cap, both as the means of filling the cap with concrete and for the insertion of a stick by which a hollow or tubular space is left in which a pin can be placed, so as to bind together the cap and the column of the next tier above, renders any defense to the charge of infringement impossible.

Claims 1, 2, 3, 4, and 5 of patent 835,717, claims 6, 10, 11 and 17 of patent 844,973, and claims 16 and 17 of patent 844,974 are alleged to be infringed.

In examining the prior art it will be noticed that the general idea of a continuous column or of a jointed fish pole-like construction was well known. The necessity of making a pillar or column continuous by a sleeve or flush, socket joint, the devices for projections or intermediate flanges as supports for girders or structures at right angles to the line of the column, and devices for strengthening the corners and stiffening the structures, were well known. Such patents as Cornell, 74,312, of February 11, 1868, Cornell, 160,574, March 9, 1875, Johnson, 225,060, March 2, 1880, Kirchhoff, 435,429, September 2, 1890, Gray, 488,274, December 20, 1892, and a publication which had not been pleaded, but which was allowed to go in evidence as illustrative of the prior art (during the course of the trial) from the book known as the Zeitschrift, translated from a copy in the New York Public Library, vol. 29, p. 936, bearing date in the year 1885, show the development of all the ideas involved in the shell or casing, as implied to metallic columns without filling. The article in the Zeitschrift describes a column substantially like the casing of the Thorn and Tresidder columns, with supports for the girders and with a socket and

flanges at the top which would receive any column or girder to be placed thereon. But in this particular column, which is said to be that used in much of the elevated railway in New York City, the so-called socket at each end of the column is for the purpose of the insertion of plates which, by means of a tie, bind together and render rigid the entire column.

The idea of merely filling columns with cement or concrete was old, as has been stated before, and as shown by the extract from Encyclopædie Des Travaux, published by J. Denfer in 1894. This discloses columns of equal diamater superposed and filled with concrete through the length of both, with pins to register the exact position and with brackets to carry floor beams. One drawing even shows a conical end fitting into the top of the column below.

Such patents as Moseley, 108,814, November 1, 1870, for a metallic pile, in which a tube or shell was filled with concrete; Borneman, 360,-275, March 29, 1887, who placed a hollow column filled with concrete over the head of a wooden pile driven in the mud, as a bridge foundation; Bryant, 546,758, September 24, 1895, who built up a structure of concrete around two upright piles and by means of terra cotta piping to form a mold for the concrete; Davis, 616,084, December 20, 1898, who filled a column made up of a series of tubes with concrete; Norcross, 701,377, June 3, 1902, who made a solid concrete column in shape like an artificial stone column, stiffening it with metal; Smith, 762,496, June 14, 1904, who made circular sections like bricks or tiles with registering rings to interlock and fit them close together around an iron center, and finally the columns themselves, in use at the time Thorn filed his application, show full appreciation of the additional strength given by filling a hollow column of concrete and of the benefit in having these columns register or stand square one upon the other, by means of a socket cap or flange.

In addition, such patents as Borneman, supra, and Bryant, supra, show the idea of imbedding a center in concrete, while other patents, such as Bryant, Davis, and Smith, supra, show appreciation of the use of a metal core or center to transmit rigidity in position from one column to a superimposed column.

A number of English patents, such as Westwood, 2,191, June 24, 1874, show a pile with a flange or socket, but particularly featuring interlocking lugs. The Cunliffe patent, 2,802, August 26, 1873, discloses the idea of metallic columns made with sockets which are to be bound together with some substance like bitumen to serve the purpose of a binder or glue when solidified in position, and these sockets or bands in the form of ornamental heads actually hold together the light pieces of which the columns were made, but do not at all show the idea of the patent in suit. The Harrison patent, 924, March 4, 1881, discloses the use, in a hollow metallic column, of core which will strengthen the column. The Dixon patent, 222, January 18, 1873, discloses an iron pillar or column of tubular shape, to be filled with concrete so as to give a stiffening or bracing against bending and also against crushing strains, and the tubes are to be slightly tapered at one end so that the casing of the other may set over the top of the one below.

Other patents and publications are shown, illustrating the universal knowledge of the advantages presented by filling a column of concrete, and also the necessity of stiffening or strengthening concrete against bending or breaking strains by the insertion of metallic cores in some form or other and the application of flanges or socket joints with bands or projections for intermediate structures; and it certainly would not be invention to fill any form of device shown in the prior art with concrete.

The plaintiff, however, contends that while he has made use of old ideas, he has secured a patent embodying the features essential to a new and useful combination, designed and adapted to meet a need which was recognized at the time, and which required inventive genius rather than mechanical skill to appreciate and overcome. The matter is so simple and so easily understood that it seems as if a mechanic having any knowledge of the use of metallic columns and of the use of concrete might have easily solved the problem or discovered the idea which made practical and easy of construction a rigid and available concrete filled column for building purposes, but the testimony shows, and the fact seems to have been, that this step was not as obvious as it now seems. While the combination does not differ much in any single detail from the previous structures, its use as a whole presents a great advance, which has apparently been recognized by the trade. The novelty and practicability of the idea has been shown by the extent of the public use proven in the testimony.

Under such circumstances it would seem that the action of the Patent Office, in finding patentability and novelty rather than mere mechanical improvement in the combination of ideas, so as to make the fireproof column shown in the Thorn patents, should be upheld.

Tresidder's own patent, involving the old idea of an interlocking structure, indicates that he was trying to solve the difficulty of building a simple reinforced concrete column, with some scheme for covering the known need of a practical joint, by the employment of some ingenious form of a well-known device. That was exactly the problem which Thorn also was attempting to solve in his patents, and the Thorn patents are so simple in construction that the element of ingenuity or invention might well be inferred from the appreciation of the adoption of simple, practical ideas in a structure which could be easily made and transported.

There is no proof of double patenting, for the last patent is for a combination involving patentable invention over the earlier patents, while the idea or actual invention of the use of a pin or metal core is shown by Thorn's testimony to have been conceived by him during the preparation of the prior applications. Claim 1 of the first patent, if limited to the mere feature of having a diameter no larger than that of the column, would seem to be anticipated, and also to have been first conceived by Tresidder. On the other hand, if intended to show a combination like the more definite claims, it is invalid for lack of definiteness in statement. This claim will therefore be held invalid, but the others are not open to this objection.

The plaintiff may have a decree on all claims sued upon, except claim 1 of patent 835,717.